IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 14, 2018

## DOYALE MONTEZ BLACKSMITH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2012-A-159      Monte D. Watkins, Judge**

_____

### No. M2017-02323-CCA-R3-PC

_____

The Petitioner, Doyale Montez Blacksmith, appeals from the Davidson County Criminal Court's denial of his petition for post-conviction relief. The Petitioner contends that he received ineffective assistance from his trial counsel because trial counsel (1) failed to file a motion to withdraw from representation after the Petitioner requested that he do so; (2) failed "to call witnesses to rebut the victim's testimony"; and (3) gave the Petitioner "incorrect advice" regarding the Petitioner's decision not to testify at trial. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Doyale Montez Blacksmith.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Deborah M. Housel, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

Following a jury trial, the Petitioner was convicted of aggravated rape, aggravated kidnapping, and aggravated stalking. State v. Doyale Montez Blacksmith, No. M2014-01417-CCA-R3-CD, 2015 WL 4556923, at *1 (Tenn. Crim. App. July 29, 2015), perm. app. denied (Tenn. Nov. 24, 2015). The trial court subsequently imposed a total effective sentence of thirty-five years. Id. On direct appeal to this court, the Petitioner only challenged the sufficiency of the evidence supporting his aggravated rape conviction. Id.

That conviction was affirmed, and our supreme court declined to review this court's opinion on November 24, 2015.

The evidence at trial established that the Petitioner and the victim "had been involved in a periodic romantic relationship for about five years." Blacksmith, 2015 WL 4556923, at *1. At the same time, the Petitioner was also in a romantic relationship with a second woman. Id. The victim testified at trial that around 3:00 a.m. on August 6, 2011, the Petitioner entered her home, "woke her, and asked why she had called" this second woman. Id. An argument ensued. Id.

The victim testified that the Petitioner "removed his belt" and instructed her to strip off her clothes. Blacksmith, 2015 WL 4556923, at *1. The victim complied and the Petitioner "struck her with his belt more than four or five times with 'excessive force.'" Id. at *1, 3. The Petitioner then instructed the victim to take her underwear off and sit on the bed with her "'legs out.'" Id. at *1. According to the victim, the Petitioner "inserted his finger in her vagina to determine if she had engaged in sexual relations with any other men." Id. When he finished, the Petitioner struck the victim "in the face with the belt buckle." Id.

The victim testified that the Petitioner left her house "long enough for her to put on her clothes," but returned and demanded that she "'go with [him].'" Blacksmith, 2015 WL 4556923, at *2. When she refused, the Petitioner struck her with his belt. Id. According to the victim, the Petitioner drove her "to an abandoned lot" and instructed her to get out of the car. Id. The victim refused, and the Petitioner "grabbed her by her clothes" and "walked her to a building foundation in the lot." Id. The Petitioner again asked the victim why she had called the Petitioner's other girlfriend. Id. The victim testified that she denied calling the other woman, and the Petitioner "struck her more than ten times with his belt and foot, and burned her with a cigarette." Id. at *2-3.

The victim testified that the Petitioner drove her home. Blacksmith, 2015 WL 4556923, at *2. The victim was eventually able to call 911. Id. When the responding officers arrived the Petitioner was "sitting on the sofa and . . . stated that he had lost control of his emotions and struck the victim." Id. at *4. After this incident, the victim obtained an order of protection against the Petitioner. Id. at *3. However, the Petitioner "continued calling her home." Id. The Petitioner also "taped an Al Green [CD] to her door." Id.

At trial, a recording of a phone call the Petitioner made from jail was played for the jury. Blacksmith, 2015 WL 4556923, at *6. The Petitioner admitted during the phone call that he had struck the victim with a belt, denied that he had struck her with a belt buckle, and said that the victim "'needed more than that.'" Id. The Petitioner was asked "whether he made the victim spread her legs in order for him to determine if she

had been with another man." Id. The Petitioner responded that "he did not care with whom the victim had sexual relations because she had not had sexual relations with him." Id.

Following his conviction and direct appeal, the Petitioner filed a timely pro se petition for post-conviction relief. Counsel was appointed to represent the Petitioner in this matter, and an amended petition was filed on his behalf. As pertinent to our review, the petitions alleged that trial counsel (1) failed to "challenge and preserve for an appeal [the] Petitioner's request to the trial [court] for an [extension of] time so that he could get another trial attorney"; (2) failed to call potential defense witnesses; and (3) failed to properly advise the Petitioner about his decision not to testify at trial. The Petitioner also filed several pro se pleadings while this matter was pending, including an unsuccessful motion to have post-conviction counsel replaced.

The Petitioner claimed at the post-conviction hearing that he "didn't get along [with trial counsel] from the initial meeting when [trial counsel] was appointed" because they had "some misunderstanding about the incident that had occurred, and things of that nature." The Petitioner testified that he asked trial counsel to "remove himself from [the Petitioner's] case" at least three or four times, but that trial counsel never filed a motion to withdraw. The Petitioner admitted that he "didn't like" trial counsel and that he filed a complaint with the Board of Professional Responsibility against trial counsel. The Petitioner claimed that trial counsel never told him what he was charged with or the applicable range of punishment, that trial counsel never provided him with the discovery materials provided by the State, and that trial counsel never discussed any possible defenses or trial strategies with him.

The Petitioner initially testified that he wanted trial counsel to withdraw after his preliminary hearing. The Petitioner explained that he had "talked to [trial counsel] about some things that went on with the victim" prior to the preliminary hearing. The Petitioner claimed that, at the preliminary hearing, the victim "defended herself on . . . [what he] had talked to [trial counsel] about." The Petitioner believed that the victim "was prepared for that . . . line of questioning" and "that let [him] know right then that [trial counsel] had [gone] to the [State] and talked with the [State] and the victim concerning those things that [they] had discussed [prior to] the preliminary hearing."

The Petitioner also claimed that he only saw trial counsel on court dates and that he never went to trial counsel's office at any time during the three years he was released on bond. The Petitioner explained that this was because "[i]t was [trial counsel's] responsibility to respond to [him] and talk to [him]." The Petitioner also claimed that once he was released on bond, he did not have to come to court until his trial date. According to the Petitioner, he was initially charged with domestic assault, and he was unaware that he had been charged with aggravated rape, aggravated kidnapping, and

aggravated stalking "until a year after [he] was released out on bond." The Petitioner claimed that he did not recall being present at his arraignment for those charges.

The Petitioner claimed that he had received a three-year offer from the State prior to his release on bond. According to the Petitioner, when he later asked trial counsel "what . . . the offer [was], [trial counsel] told [him] ten years." The Petitioner testified that they "got to arguing right there, and [he] asked [trial counsel] to remove himself off [the Petitioner's] case." According to the Petitioner, trial counsel refused and told him that he "had to wait to get in front of the judge" to request new counsel. The Petitioner testified that he eventually brought the matter up with the trial court but that his request for new counsel was denied. The Petitioner also testified that he received an offer from the State of eight years, with only one year to be served in confinement, shortly before his trial. However, he rejected the offer because he was "guilty for the domestic assault and nothing more."

The Petitioner claimed that he did not commit the offenses he was convicted of and that trial counsel "didn't even investigate the whole scene." According to the Petitioner, the victim had "mental problems." The Petitioner claimed that he told trial counsel that he wanted his "nieces and the victim's daughter and [his] sister and [his] nieces or nephew" to testify at trial to impeach the victim's testimony. The Petitioner admitted that trial counsel "talked to a few of them, but [trial counsel] didn't call [any] of them at the trial."

The Petitioner claimed that he wanted to testify at trial, but that trial counsel "requested that" he not. According to the Petitioner, he was not going to "do something [trial counsel] asked [him] not to do." The Petitioner further explained that he had been "forced to go to court with [trial counsel]," so there was "no talking after that" because he "put it in the Lord's [hands]." The Petitioner claimed that he "was silent throughout that whole thing." The Petitioner admitted that he told the trial court he did not want to testify, but claimed that he only did so "because [his] lawyer had already told [him] not to testify." The Petitioner also admitted that he had prior convictions for "armed robbery," reckless endangerment with a deadly weapon, reckless aggravated assault, being a convicted . . . felon in possession of a handgun, and aggravated assault, but claimed that he "wasn't worrying about those felonies."

Trial counsel testified that he was appointed to represent the Petitioner and that he was present with the Petitioner at the preliminary hearing and arraignment. Trial counsel recalled that he met with the Petitioner two or three times outside of court dates while the Petitioner was out on bond. Trial counsel did not recall the Petitioner's ever attempting to arrange a meeting with him while the Petitioner was out on bond. Trial counsel testified that when he received the discovery materials from the State, he took a copy to "where [the Petitioner] was staying" and reviewed the materials with the Petitioner. Trial

-4-

counsel also testified that he reviewed the charges and applicable ranges of punishment with the Petitioner, in addition to discussing possible defenses and trial strategies with him.

Trial counsel testified that the fact that the State would not lower its offer from ten years was "the source of any [tension] between [him]self and [the Petitioner]." Trial counsel explained that the Petitioner "didn't like [him] because [he] was the messenger of that offer." Trial counsel admitted that this caused the Petitioner to ask him to withdraw. However, trial counsel testified that he never filed a motion to withdraw because he thought it "would be a waste of time." Trial counsel explained that he did not think the Petitioner's anger over the State's offer was a valid reason to withdraw or that the trial court would grant such a motion. Trial counsel asserted that his relationship with the Petitioner never got to the point "where [they] were not functioning or not able to communicate."

Trial counsel testified that he spoke to the Petitioner's nieces, but he did not call them at trial because he did not believe that their testimony would be relevant or admissible. Trial counsel admitted that he "strongly advised" the Petitioner against testifying at trial "because of his record." However, trial counsel believed that "what [the Petitioner] did was his choice." Trial counsel recalled that the Petitioner was questioned about his decision not to testify under oath.

The post-conviction court entered a written order denying post-conviction relief. The post-conviction court accredited the testimony of trial counsel and found the Petitioner's testimony not "to be credible." The post-conviction court concluded that the Petitioner had failed to prove his factual allegations by clear and convincing evidence. The post-conviction court further concluded that trial counsel's actions "did not rise to the level of incompetency." The Petitioner now appeals to this court.

## ANALYSIS

The Petitioner contends that he received ineffective assistance from his trial counsel. The Petitioner's argues that trial counsel was ineffective for (1) failing to file a motion to withdraw from representation after the Petitioner requested that he do so; (2) failing "to call witnesses to rebut the victim's testimony"; and (3) giving the Petitioner "incorrect advice" regarding the Petitioner's decision not to testify at trial. The State responds that the post-conviction court did not err in denying the petition.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we

conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The constitutional guarantee to assistance of counsel does not include "the right to a meaningful relationship between an accused and his counsel." State v. Nelson Troglin, No. E2005-02015-CCA-R3-CD, 2006 WL 2633107, at *27 (Tenn. Crim. App. Sept. 14, 2006) (citing State v. Carruthers, 35 S.W.3d 516, 546 (Tenn. 2000)). To that end, "trial counsel is not required to withdraw representation merely because a client has filed a complaint against him with the Board [of Professional Responsibility]." Shaun Alexander Hodge v. State, No. E2009-02508-CCA-R3-PC, 2011 WL 3793503, at *5 (Tenn. Crim. App. Aug. 26, 2011).

Any "potential conflicts of interest arising from personal difficulties in the attorney-client relationship" must rise to the level where the "attorney cannot exercise his or her independent professional judgment free of compromising interests and loyalties" in

order to amount to ineffective assistance of counsel. Thaddeus Johnson v. State, No. W2014-00053-CCA-R3-PC, 2014 WL 7401989, at *5 (Tenn. Crim. App. Dec. 29, 2014) (citing State v. White, 114 S.W.3d 469, 476 (Tenn. 2003)). Here, trial counsel testified that the Petitioner "didn't like [him] because [he] was the messenger of" the State's ten-year offer. Trial counsel did not file a motion to withdraw because he did not believe that the Petitioner's anger over the State's offer was a valid reason to withdraw. More importantly, trial counsel testified that his relationship with the Petitioner never got to the point "where [they] were not functioning or not able to communicate." The post-conviction court accredited trial counsel's testimony, and we conclude that the record does not preponderate against that finding.

With respect to the Petitioner's argument that trial counsel failed "to call witnesses to rebut the victim's testimony," we note that the Petitioner failed to present those witnesses at the post-conviction hearing. This court has long held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Generally, "this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id. We cannot speculate as to what a witness may have said if presented or how the witness may have responded to a rigorous cross-examination. Id. As such, this issue is without merit.

Finally, the Petitioner argues that trial counsel gave him "incorrect advice" regarding his decision not to testify at trial. Trial counsel testified that he "strongly advised" the Petitioner against testifying at trial "because of his record." The Petitioner admitted to having five prior felony convictions. Regardless of his advice, trial counsel believed that "what [the Petitioner] did was his choice." The post-conviction court chose to accredit trial counsel's testimony and found the Petitioner's testimony not to be credible. The record does not preponderate against these findings. Furthermore, the Petitioner was questioned about his decision not to testify under oath and told the trial court that he did not want to testify. It is well settled that a petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Accordingly, we conclude that this issue is also without merit.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-7-